United States District Court
Southern District of Texas
**ENTERED**
February 05, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KRISTINA C., *as next friend of* J.J., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-23-2271 |
| § | |
| KLEIN INDEPENDENT SCHOOL § | |
| DISTRICT, § | |
| § | |
| Defendant. § | |
| § | |

**MEMORANDUM AND ORDER**

Kristina C. sued Klein Independent School District under the Individuals with Disabilities Education Act on behalf of J.J., a 13-year-old seventh-grade student with special needs. (Docket Entry No. 1). J.J. was in the Klein ISD gifted and talented program and qualified for special education services as a student diagnosed with autism, ADHD, and vulnerability to emotional disturbances. (Docket Entry No. 1 at 2). J.J. had poor impulse control and understanding of social interactions; often misinterpreted verbal and nonverbal communication by others; was unable to evaluate situations quickly and effectively; was unable to control his emotions, especially when triggered; was often irritable and anxious; and had difficulty in asking for assistance. (*Id.*).

J.J. was suspended for two days for fighting with another student. On the day he returned to school, J.J. brought a clay cutter with him. (Docket Entry No. 17 at 11). J.J. told Klein ISD personnel that he took the cutter to school "to have something to defend [him]self" and that he brought it out to show his friends. (*Id.*). Klein ISD officials decided that J.J.'s conditions made him unable to adhere to the district's code of conduct and to meet expectations for behavior and classroom interactions. J.J. was placed in a Disciplinary Alternative Education Program. Kristina

C. administratively challenged the decision and placement, arguing that J.J.'s acts of bringing the clay cutter to school and showing it to other students were manifestations of his autism and ADHD. (Docket Entry No. 17 at 9). The hearing officer determined that the clay cutter was a weapon and that J.J.'s possession of it did not stem from his autism and ADHD. Kristina C. then filed this suit.

Both Kristina C. and KISD have filed motions for judgment on the administrative record. (Docket Entry Nos. 17, 18). After reviewing the briefing, the administrative record, and the law, the court grants KISD's motion for summary judgment and denies Kristina C.'s motion for judgment. Final judgment is separately entered. The reasons are set out below.

**I.      Summary Judgment Standard**

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)). "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (quoting reference omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying" the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When 'the non-movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is [a dispute] of material fact warranting trial." *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022)

(alteration in original) (quoting reference omitted). "However[,] the movant 'need not negate the elements of the nonmovant's case.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)). "If 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

After the movant meets its Rule 56(c) burden, "the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quoting references omitted). The nonmovant "must identify specific evidence in the record and articulate the 'precise manner' in which the evidence" aids their case. *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (quoting reference omitted). All reasonable inferences are drawn in the nonmovant's favor. *Loftin v. City of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022). But a nonmovant "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting reference omitted).

**II.     Analysis**

"When a district court reviews a hearing officer's decision under the IDEA program, it receives the records of the administrative proceedings and also takes additional evidence at the request of any party." *Houston Indep. Sch. Dist. v. V.P. ex rel. Juan P.*, 582 F.3d 576, 582–83 (5th Cir. 2009). "When no new evidence is presented to the district court in an IDEA suit . . . 'the motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record.'" *Loch v. Edwardsville School Dist. No. 7*, 327 Fed. App'x 647 (7th Cir. 2009) (quotation omitted). The district court must "reach an independent

3

decision based on a preponderance of the evidence." *See Cypress–Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 252 (5th Cir. 1997).

In reaching this decision, "courts must be careful to avoid imposing their view of preferable educational methods upon the States." *Bd. of Ed. v. Rowley,* 458 U.S. 176, 207 (1982). State and local authorities have primary responsibility for educating children and "courts lack the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *See Rowley*, 458 U.S. at 207–08 (internal quotations omitted). Although a court's review under the IDEA is "virtually *de novo*," *V.P. ex rel. Juan P.*, 582 F.3d at 583, this is not an invitation to "the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Rowley*, 458 U.S. at 206. Accordingly, courts place "due weight" on the hearing officer's decision. *V.P. ex rel. Juan P.*, 582 F.3d at 582–83.

"One of the primary purposes of the IDEA is to ensure that children with disabilities receive a 'free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living.'" *Id.* (quoting 20 U.S.C. § 1400(d)(1)(A)). Klein ISD must "(1) provide each disabled child within its jurisdictional boundaries with a 'free appropriate public education' tailored to his unique needs, and (2) assure that such education is offered . . . in the least restrictive environment consistent with the disabled student's needs." *Id.* (quoting *Michael F.*, 118 F.3d at 247). These requirements are implemented by an Individualized Education Program developed for each disabled student. The IEP is developed by an IEP Team made up of school administrators, teachers, and the child's parents.

The IDEA also provides that, with a few exceptions:

> [W]ithin 10 school days of any decision to change the placement of a child with a disability because of a violation of a code of student conduct, the local educational agency, the parent,

4

>and relevant members of the IEP Team (as determined by the parent and the local educational agency) shall review all relevant information in the student's file, including the child's IEP, any teacher observations, and any relevant information provided by the parents to determine--
>**(I)** if the conduct in question was caused by, or had a direct and substantial relationship to, the child's disability; or
>**(II)** if the conduct in question was the direct result of the local educational agency's failure to implement the IEP.

20 U.S.C. § 1415. Kristina C. argues that J.J.'s actions of bringing the clay cutter to school and showing it to other students had a direct relationship to J.J.'s disabilities, that the actions were the direct result of KISD's failure to implement the IEP, and that no exceptions applied.

Kristina C. contends that although J.J.'s IEP originally focused on his frustration with schoolwork, his "behaviors evolved into demonstrations of physical and verbal aggression toward his peers[.]" (Docket Entry No. 21 at 3–4). Kristina C. contends that JJ's actions were therefore caused by his disabilities and by the school's failure to recognize the actions as a manifestation of his disabilities. J.J.'s behavior intervention plan explained that "when J.J. becomes overwhelmed and upset, he will often shut down and begin exhibiting signs of frustration, such as grunting, clenching teeth, and/or fists, and crying. This may also escalate to verbal aggression (yelling/screaming, use of profanities/threats, etc.)." (Docket Entry No. 17 at 10). J.J. brought the cutter to school multiple days after his last altercation with other students, stating that he needed it for self-defense. The hearing officer concluded that J.J.'s decision to bring the cutter to "defend himself" was "neither an impulsive act nor representative of any of his prior actions." (*Id.* at 21).

Kristina C. argues that "[i]t would not be atypical for an individual with autism to have such stress and such difficulties even three days after the triggering event." (Docket Entry No. 18 at 15). At the hearing, an expert for J.J. testified to the same. However, the school district is required to make a decision based on the specific student's "past actions and diagnoses"; too high a level of generality may be impermissible. *Gloria V. v. Wimberley Indep. Sch. Dist.*, No. 1:19-

5

CV-951-RP, 2021 WL 770615 (W.D. Tex. Jan. 5, 2021), *aff'd*, No. 21-50349, 2022 WL 636406 (5th Cir. Mar. 4, 2022).  The record shows that while J.J. had difficulties in interacting with others and in responding to peer conflict in the moment, there was no evidence in his education file or in his recent behavior that would connect his disabilities with a premeditated decision to bring a cutter to school in self-defense.  The record shows that in past stressful situations at school, J.J. would "shut down and begin exhibiting signs of frustration, such as grunting, clenching teeth, and/or fists, and crying. This may also escalate to verbal aggression (yelling/screaming, use of profanities/threats, etc.)." (Docket Entry No. 17 at 10).  There is no prior record showing that he had possessed or displayed a sharp object that could be used as a weapon at school with the stated intent to use it to "defend himself" by physical force.  This behavior is different than the signs of his disabilities that J.J. had previously exhibited.   The hearing officer therefore correctly determined by a preponderance of the evidence that the acts involving the cutter were not a manifestation of J.J.'s disability.

Kristina C. also argues that Klein ISD failed to implement J.J.'s IEP because it did not develop a new behavior plan to teach J.J. "appropriate skills and how to navigate through the student body by generalizing skills learned in his social skills class." (Docket Entry No. 18 at 18). One of J.J.'s teachers testified at the hearing that the implementation of his IEP included daily tracking to determine if further intervention was needed. (Docket Entry No. 17 at 21).  The daily tracking had not shown a need for additional or different behavior plans for J.J. (*Id.*).  Kristina C. has not pointed to evidence showing a failure to implement J.J.'s IEP, only a difference in opinion as to whether the behavior plan should have been updated or modified. These general allegations, without any specifics in the original motion and the response, (Docket Entry Nos. 18, 21), in combination with Klein ISD's evidence about how it implemented J.J.'s IEP, show by a

preponderance of the evidence that Klein ISD did not fail to implement J.J.'s IEP. Klein ISD was therefore permitted to discipline J.J. for bringing an item to school that he intended to use for self-defense.

Finally, Kristina C. argues that the clay cutter was not a "weapon" under the IDEA. It is unlikely that a clay cutter falls into the definition of a "weapon" as an instrument capable of "causing death or serious bodily injury[.]" 18 U.S.C. § 930. Under IDEA, "[s]chool personnel may remove a student to an interim alternative educational setting for not more than 45 school days without regard to whether the behavior is determined to be a manifestation of the child's disability, in cases where a child . . . carries or possesses a weapon to or at school[.]" 20 U.S.C. § 1415. Because the school promptly and properly determined the behavior was not a manifestation of J.J.'s disability, whether the clay cutter qualifies as a weapon under IDEA does not change the outcome of the case.

The court grants Klein ISD's motion for summary judgment and denies Kristina C.'s motion for judgment. Final judgment is separately entered.

SIGNED on February 5, 2024, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge